UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **SHEFA, LLC, AND SIDNEY ELHADAD**, <br><br> Plaintiffs, <br><br> v. <br><br> **CITY OF SOUTHFIELD, ET AL.**, <br><br> Defendants. | 2:20-cv-11038-TGB-EAS <br><br> HON. TERRENCE G. BERG <br><br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS (ECF NOS. 11, 12)** |

This dispute arises out of Plaintiffs' efforts to redevelop a long-defunct hotel in Southfield, Michigan. Plaintiffs Shefa, LLC and its owner Sidney Elhadad generally allege that Defendants the City of Southfield, the Southfield Downtown Development Authority ("DDA"), and its Director, Al Aceves, as well at the City's law firm, Plunkett Cooney, P.C., and two of its attorneys, Douglas C. Bernstein and Patrick Lannen, have interfered with and hampered Plaintiffs' attempted redevelopment or sale of the property. Plaintiffs allege fifteen causes of action: (1) breach of contract, (2) inverse condemnation, (3) conspiracy under 42 U.S.C. § 1985(3), (4) conspiracy under 42 U.S.C. § 1983, (5) conspiracy to interfere with livelihood, (6) conspiracy under 42 U.S.C. § 1985(3), (7) common law conspiracy, (8) concert of action, (9) malicious prosecution, (10) sanctions under 28 U.S.C. § 1927, (11) interference with

1

business relationship or expectancy of business relationship, (12) *Monell* municipal liability under 42 U.S.C. § 1983, (13) costs and fees under 42 U.S.C. § 1988, (14) violations of the Fifth and Fourteenth Amendments, and (15) violations of the Fourteenth Amendment. ECF No. 1, PageID.18-53. Currently before this Court are the City of Southfield Defendants' Motion to Dismiss Pursuant to 12(b)(6) (ECF No. 11) and the law firm Defendants' Motion to Dismiss and for Judgment on the Pleadings (ECF No. 12).

## I.   BACKGROUND

Plaintiff Sidney Elhadad is the member owner and manager of Plaintiff Shefa LLC ("Shefa"), a Michigan limited liability company. ECF No. 1, PageID.5. In 2009, Shefa acquired property located at 16400 J.L. Hudson Drive in Southfield Michigan. ECF No. 1-3, PageID.66, Shefa operated this property as a hotel until it closed its business operations in 2010. ECF No. 1, PageID.5. Unpaid real estate taxes accumulated, as did charges for water and sewage service. ECF No. 1-3, PageID.67.

In 2014, Shefa filed a Chapter 11 bankruptcy proceeding. The Bankruptcy Court entered a Confirming Order on February 19, 2016, providing, among other things, that "Shefa was obligated to pay $1.8 million to the Oakland County Treasurer for pre-petition water and sewage charges," and to pay back taxes as well. ECF No. 1-2, PageID.60. Shefa also granted the City of Southfield ("Southfield") a deed to the

2

property to be released upon an "Event of Default," provided a first priority mortgage to Southfield, and was to obtain site plan approval for its proposed redevelopment within 180 days of the effective date of the plan. ECF No. 1-2, PageID.60-63. The Bankruptcy case was closed on February 6, 2017.

Soon thereafter, Southfield, represented by Defendant Plunkett Cooney P.C. ("Plunkett Cooney"), filed a motion in the United States Bankruptcy Court alleging that Shefa had defaulted on various provisions of the Confirming Order and requesting the deed to the property be released. ECF No. 1-3. PageID.67. The Bankruptcy Court denied Southfield's motion, finding that no "Event of Default," as required by the Confirming Order, had occurred. *Id*. at PageID.75. Southfield appealed the order, but the District Court affirmed the Bankruptcy Court's ruling. ECF No. 1-4, PageID.98-99.

Following the District Court's 2019 decision, Southfield sued Shefa in Oakland County Circuit Court, seeking appointment of a receiver, judicial foreclosure, and a declaration that the hotel property was a "nuisance" and a "dangerous building." ECF No. 1-6, PageID.112. The Oakland County Circuit Court granted Shefa's motion for summary disposition, concluding that it lacked jurisdiction over the issues, and that Southfield's requests for declaratory relief failed to state a claim. *Id*.

at PageID.115. The state court also denied Shefa's request for sanctions against Southfield and Plunkett Cooney. *Id*.

On April 27, 2020, Plaintiffs filed the instant complaint against Southfield, the Southfield Downtown Development Authority ("the DDA"), Al Aceves (the DDA's Executive Director), Plunkett Cooney, and Plunkett Cooney attorneys Douglas Bernstein and Patrick Lannen, alleging conspiracy, concert of action, malicious prosecution, and several additional claims based on alleged violations of federal and state law.

Pending before the court are two motions to dismiss filed by Plunkett Cooney P.C., Douglas Bernstein, and Patrick Lannen (the "Plunkett Cooney Defendants") (ECF No. 11) and by the City of Southfield, the Southfield Downtown Development Authority, and Al Aceves ("City Defendants" or "Southfield Defendants") (ECF No. 12).

## II.   LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the court to dismiss a lawsuit if it "fails to state a claim upon which relief can be granted." Rule 8(a) requires only that pleadings contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Though this standard is liberal, courts have held that it requires plaintiffs to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" in support of their grounds for entitlement to relief. *Albrecht v.*

4

*Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)).

In evaluating a motion to dismiss under Rule 12(b)(6), courts must construe the complaint in the light most favorable to the plaintiff and accept all well-pled factual allegations as true. *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006)). Consideration of a motion to dismiss under Rule 12(b)(6) is generally confined to the pleadings. *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). Courts may, however, consider any exhibits attached to the complaint or the defendant's motion to dismiss "so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

## III.   ANALYSIS

Defendants argue that this Court lacks subject matter jurisdiction and, alternatively, that this Court should apply the *Younger* abstention doctrine. The Court finds these arguments unavailing. Defendants also argue that Plaintiffs have failed to plead any of their claims with sufficient particularly. ECF No. 11, PageID.236; ECF No. 19, PageID.577. Defendants further contend that most of Plaintiffs' claims must fail as a matter of law. Many of these arguments apply to more than

5

one claim, and some of Plaintiffs' claims are potentially duplicative. Therefore, the Court will address each claim in turn, grouping claims where a common deficiency applies to multiple claims. For reasons that will be explained below, the Plunkett Cooney Defendants' Motion to Dismiss will be granted as to all counts. The Southfield Defendants' Motion to Dismiss will be granted as to all counts but Count Two.

### a. That the Bankruptcy Court may also have jurisdiction over this matter does not deprive this Court of subject-matter jurisdiction

Defendants argue that this Court lacks subject matter jurisdiction because the Complaint involves "core proceedings" that should be heard by the bankruptcy court. ECF No. 12, PageID.299. Additionally, Defendants assert that the Court should abstain and dismiss under the *Younger* abstention doctrine, because Defendant's appeal of the state court ruling is still pending.

Plaintiffs, however, assert that the bankruptcy case is closed and the claims in the instant litigation "are for constitutional claims; not core proceedings." ECF No. 17, PageID.475. And, while the bankruptcy court retains jurisdiction "to enforce terms and conditions," the current Complaint seeks "damages sustained *after* the entry of the Confirming Order." *Id.* at PageID.476 (emphasis in original). In sum, Plaintiffs argue that they raise constitutional claims under 42 U.S.C. § 1983 and the

intentional tort of interference—claims which are within this Court's jurisdiction.

Bankruptcy courts are authorized under Section 157(b)(1) to "hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11." *Stern v. Marshall*, 564 U.S. 462, 475 (2011) (quoting 28 U.S.C. § 157(b)(1)). District courts have both (1) original and exclusive jurisdiction "of all cases under title 11," and (2) "original but non-exclusive jurisdiction 'of all civil proceedings arising under title 11, or arising in or related to cases under title 11." *In re HNRC Dissolution Co*., 761 F. App'x 553, 559 (6th Cir. 2019) (quoting 28 U.S.C. § 1334(a), §1334(b)).

Defendants concede that the bankruptcy court has jurisdiction over Plaintiffs' claims. ECF No. 12, PageID.299 ("Plaintiffs' claims involve core proceedings that [the] Bankruptcy Court has jurisdiction over"). And while it is well-settled law that subject matter jurisdiction cannot be conferred by consent, extensive analysis of the bankruptcy court's continuing jurisdiction is unnecessary, because this Court has jurisdiction under 28 U.S.C. § 1331 over Plaintiffs' federal law claims and may exercise supplemental jurisdiction under 28 U.S.C. § 1367(a) over the remaining state-law claims.

Defendants point to no authority that would divest this Court of subject matter jurisdiction merely because the bankruptcy court may also

have jurisdiction over the issues at bar. And the Sixth Circuit has previously rejected just this argument. *In re Camall Co.*, 16 F. App'x 403, 410 (6th Cir. 2001) (noting no authority for the proposition that a bankruptcy court may "divest the Federal District Court of its plenary jurisdiction" regardless of whether a proceeding is core or non-core). Therefore, this Court does not lack subject matter jurisdiction over Plaintiffs' claims.

### b. *Younger* abstention is not warranted

The City Defendants argue that *Younger* abstention is proper because Southfield's appeal of the Oakland County Circuit Court's decision to dismiss Southfield's enforcement action is still pending. ECF No. 19, PageID.576. Further, the City Defendants argue, judicial sales, the enforcement of ordinances, and the enforcement of nuisance law are important state interests justifying abstention. ECF No. 12, PageID.300.

Generally, "federal courts are obliged to decide cases within the scope of federal jurisdiction," and may not abstain "simply because a pending state-court proceeding involves the same subject matter." *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013). Under limited circumstances, however, the "*Younger* abstention" doctrine laid out in *Younger v. Harris*, 401 U.S. 37 (1971), directs federal courts to abstain from deciding issues that would interfere with pending state proceedings. But the *Younger* abstention doctrine is "narrow" and is proper only in

three "exceptional circumstances." *Doe v. Univ. of Kentucky*, 860 F.3d 365, 369 (6th Cir. 2017) (citing *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989)) ("*NOPSI*"). The first is ongoing state criminal prosecutions. *Doe*, 860 F.3d at 369. The second is "particular state civil enforcement proceedings that are akin to criminal prosecutions." *Sprint Communications, Inc.*, 571 U.S. at 72. The third is "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions, such as contempt orders." *Doe*, 860 F.3d at 369, (quoting *NOPSI*, 491 U.S. at 368 (internal quotation marks omitted)). *Sprint Communications* clarified that only when a state proceeding falls into one of those three categories may a court then proceed to the three-factor test laid out in *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423 (1982). *Sprint Communications Inc.*, 571 U.S. at 82 ("In short, to guide other federal courts, we today clarify and affirm that *Younger* extends to the three 'exceptional circumstances' identified in *NOPSI*, but no further.") Under the *Middlesex* test, a court may abstain where "(1) state proceedings are currently pending; (2) the proceedings involve an important state interest; and (3) the state proceedings will provide the federal plaintiff with an adequate opportunity to raise his constitutional claims." *Doe*, 860 F.3d at 369, (quoting *Middlesex*, 457 U.S. at 432-34).

In arguing for *Younger* abstention, the City Defendants proceed directly to the *Middlesex* test, alleging that the state court proceeding "involves important state interests" without addressing whether the proceeding falls into one of the three categories where *Younger* abstention is appropriate. Additionally, the single case cited by the City Defendants in support of their argument for abstention was decided before *Sprint Communications*, and as such proceeds directly to a *Middlesex* inquiry without considering the threshold question. *See Kircher v. Charter Twp. of Ypsilanti*, No. 06-14801, 2007 WL 1839895, at *3 (E.D. Mich. June 27, 2007) Therefore, that case is inapposite when considering whether the state proceeding at issue here falls into the categories outlined in *Sprint Communications*.

Southfield, the plaintiff in the Oakland County proceeding, sought a declaratory judgment that the hotel property was a "nuisance" and a "dangerous building" under Michigan law, requested that the state court appoint a receiver to facilitate a sale of the property, and alleged that "defaults under the Confirmation Order" entered by the bankruptcy court allowed it to initiate foreclosure of the property. ECF No. 1-6, PageID.111. The Oakland County Circuit Court concluded that it lacked jurisdiction over the claims. It also concluded that Southfield's request for declaratory relief failed to state a claim. Southfield appealed, and that appeal is now pending before the Michigan Court of Appeals.

10

The question then, is whether the state proceeding falls within the "exceptional circumstances" to which *Younger* abstention applies: (1) a "state criminal prosecution," (2) a state civil enforcement proceeding "akin to criminal prosecution," (3) or a civil proceeding "involving certain orders that are uniquely in furtherance of the state courts' abilities to perform their judicial functions." *Doe*, 860 F.3d at 369. First, category (1) is inapplicable, because the state proceeding is plainly not a criminal proceeding. And category (3) does not apply, because going forward with this matter will not interfere with the state court's "ability to enforce its orders," *Doe*, 860 F.3d at 369, as the only order issued in the state proceeding was one dismissing the case for lack of jurisdiction.[1]

---

[1] The Ninth Circuit has held that appointment of a receiver is a "core" order implicating a state court's "interest in enforcing the orders and judgments of its courts." *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 759 (9th Cir. 2014). However, the only case applying that conclusion in the *Younger* context involved a state proceeding where a receiver had already been appointed by the state court when the federal suit was filed, and the federal plaintiff sought a federal injunction invalidating the order appointing the receiver. *Gilliam v. Watanabe*, No. CV 20-00201 JMS-RT, 2020 WL 5223778, at *3 (D. Haw. Sept. 1, 2020). That case is distinguishable from the case at bar, where no receiver has been appointed, and no state court order entered with which this case would interfere. *Gilliam*, 2020 WL 5223778, at *3 ("The order appointing and instructing the receiver to sell the property relates to the state courts' ability to *enforce compliance with judgments already made*." (emphasis added, internal quotation marks and citation omitted).

Therefore, *Younger* abstention will only be appropriate if the state proceeding is a civil enforcement proceeding akin to criminal prosecution.

The Sixth Circuit has not decided, post *Sprint Communications*, whether a state foreclosure action, a request to appoint a receiver, or an action seeking a declaration that a building is a nuisance constitutes an enforcement proceeding akin to criminal prosecution.[2] As to a nuisance enforcement action, another court in this District has declined to abstain under *Younger* when faced with a state nuisance enforcement claim. *See McCausland v. Charter Twp. of Canton*, No. 18-12409, 2019 WL 4746763, at *9 (E.D. Mich. Sept. 30, 2019)(Hood, C.J.)(declining to abstain from hearing equal protection, due process, and conspiracy claims despite an ongoing state nuisance enforcement proceeding). The logic of *McCausland* is compelling. Here, as in that case, addressing the federal Plaintiffs' claims would not interfere with the state proceeding. Addressing Plaintiffs' civil rights and tort claims would not enjoin or otherwise interfere with enforcement of state nuisance laws. And moreover, even if the Court of Appeals reverses the Oakland County Court and finds that jurisdiction is proper, the trial court has already

---

[2] A number of pre-*Sprint Communications* cases have applied *Younger* in the building code and nuisance contexts. *See e.g.*, *Gherghel v. Canton Twp.*, No. 10-CV-12065, 2011 WL 1982921, at *1 (E.D. Mich. May 20, 2011); *Kircher v. Charter Twp. of Ypsilanti*, No. 06-14801, 2007 WL 1839895, at *3 (E.D. Mich. June 27, 2007). But, as discussed above, these cases do not conduct the full inquiry called for by *Sprint Communications*, and are distinguishable on that basis.

determined that, even if it had jurisdiction, Southfield failed to allege a cognizable nuisance enforcement claim. ECF No. 1-6, PageID.112-13.

The Sixth Circuit has not spoken as to whether a foreclosure claim in state court is an enforcement proceeding akin to criminal prosecution. A review of decisions in other courts reveals that state court foreclosure actions are generally not considered "exceptional circumstances" as outlined in *Sprint Communications*. *Harmon v. Dep't of Fin.*, No. CV 18-1021-RGA, 2021 WL 355152, at *3 (D. Del. Feb. 2, 2021) ("Courts in this Circuit have declined to apply *Younger* abstention when the underlying state action is a foreclosure action, absent a request to enjoin state proceedings because it does not fall into any of the three [*Sprint Communications*] categories."); *Gorodeski v. U.S. Bank Nat'l Ass'n*, 2016 WL 111422, at *3 (D.N.J. Jan. 11, 2016) ("Courts have routinely found that foreclosure proceedings do not fall within these three categories, and have declined to apply *Younger* abstention to state court foreclosure proceedings.") (collecting cases); *MacIntyre v. JP Morgan Chase Bank*, 2015 WL 1311241, at *2 (D. Colo. Mar. 19, 2015) (holding that none of the "three specifically enumerated categories" in *Sprint Communications* "appear to apply to" a Colorado judicial foreclosure proceeding); *Lech v. Third Fed. Sav. & Loan Ass'n of Cleveland*, No. 2:13-CV-518, 2013 WL 6843062, at *3 (S.D. Ohio Dec. 27, 2013), *report and recommendation adopted*, No. 2:13-CV-518, 2014 WL 184402 (S.D. Ohio Jan. 14, 2014)

("Here, Plaintiff does not seek to enjoin the state-court foreclosure proceedings. Accordingly, because this federal action will not interfere with the state proceeding, *Younger* abstention is unwarranted.").

The cases in which *Younger* abstention was applied are generally only those in which a federal plaintiff sought to enjoin the ongoing state court foreclosure action, or otherwise requested relief that would effectively overturn a decision of the state court. *See, e.g.*, *John J. Pembroke Living Tr. v. U.S. Bank Nat'l Ass'n for WaMu Series 2006-AR11 Trust.*, 2016 WL 9710025, at *4 (D. Colo. Oct. 24, 2016); *Abbatiello v. Wells Fargo Bank*, *N.A.*, 2015 WL 5884797, at *4 (E.D.N.Y. Oct. 8, 2015); *Ozuzu v. Greenpoint Mortg. Funding*, 2020 WL 5658776, at *6 (E.D.N.Y. Sept. 23, 2020). Here, the Oakland County Court has already dismissed the state foreclosure action, and Plaintiffs do not seek to enjoin that proceeding.

Because at least one court in this district has concluded that nuisance abatement proceedings do not fall within the "exceptional circumstances" to which *Younger* abstention should apply, and because the state court dismissed Southfield's nuisance claim, *Younger* abstention is not appropriate in deference to the state nuisance enforcement action. And because Plaintiffs do not seek to enjoin the foreclosure proceeding (which, it should be noted, was already dismissed by the state trial court), *Younger* abstention does not apply to the state

14

foreclosure action. The Court need not abstain from jurisdiction pursuant to the *Younger* doctrine. Should the course of the state court action proceed in a way that implicates *Younger* or any other abstention doctrine in the future, the issue may be revisited at the request of the parties.

### c. Breach of contract and inverse condemnation claims (Counts One and Two)

Defendants do not specifically address Plaintiffs' claims under Count One (breach of contract) or Count Two (inverse condemnation), except a general argument that none of Plaintiffs' claims are pled with sufficient specificity. *See, e.g.*, ECF No. 19, PageID.577.

### i. Plaintiffs fail to adequately plead breach of contract

To state a claim for breach of contract in Michigan, a plaintiff must allege: "(1) the existence of a valid contract; (2) the terms of the contract; (3) breach of the contract; and (4) an injury caused by the breach." *Carter v. CrossCountry Mortg., Inc.*, No. 18-12714, 2019 WL 3958275, at *2 (E.D. Mich. Aug. 21, 2019). Plaintiffs allege the existence of a contract. ECF No. 1, PageID.19 (alleging "that the Confirming Order [] is an agreement between the parties"); ECF No. 1-7, PageID.118 (mortgage agreement between Plaintiff Shefa LLC and Southfield). And Plaintiffs have alleged an injury: "that Shefa has been unable to redevelop the [Hotel], has been unable to reopen the Hotel for busines and has been required to pay costs

associated with maintaining the Hotel as a vacant structure." But while Plaintiffs allege general bad behavior on the part of Southfield, nowhere do they specifically allege that this behavior violated any term of the Confirming Order or the mortgage. Plaintiff does not allege that Southfield failed to live up to any obligation imposed by the Confirming Order, or otherwise explain how that agreement was breached. Therefore, Plaintiffs have failed to state a claim for breach of contract.

### ii. Plaintiffs have stated a claim of inverse condemnation

To prevail on a claim for inverse condemnation under Michigan law, a plaintiff must prove: "that the government's actions were a *substantial* cause of the decline of his property's value and also establish the government abused its legitimate powers in affirmative actions aimed directly at the plaintiff's property." *Hescott v. City of Saginaw*, No. 10-13713, 2012 WL 4955254, at *1 (E.D. Mich. Oct. 17, 2012) (citing *Hinojosa v. Dep't of Nat. Res.*, 263 Mich. App. 537, 548, 688 N.W.2d 550, 557 (2004)) (emphasis in original).

Plaintiffs have stated a claim for inverse condemnation. Plaintiffs allege that they have been deprived of all economic value associated with the hotel property because, due to the conduct of the Southfield Defendants, they have been "unable to redevelop" the property, or "reopen the Hotel for business." ECF No. 1, PageID.21. Plaintiffs allege that they have taken "great pains" to sell or redevelop the property, *Id.*

16

at PageID.12, and have received "outstanding genuine offers to purchase and redevelop the Hotel," but that the city has hindered their efforts to do so by "turning away deals." *Id.* at PageID.11. "Government action that prevents or hinders the sale of property" can serve as the basis for an inverse condemnation claim. *Quinn v. City of Grosse Pointe Farms*, No. 250464, 2005 WL 159796, at *1 (Mich. Ct. App. Jan. 25, 2005). And Plaintiffs allege that Southfield has abused its legitimate powers by imposing onerous regulations in an effort to obtain the property illegitimately. Plaintiffs allege that Southfield is doing this, at least in part, because utility access to an adjoining property (that Southfield owns and is attempting to sell) runs through Plaintiffs' property. ECF No. 1, Page.ID 13-14. Taking these allegations as true, as the court must at the motion to dismiss stage, Plaintiffs have stated a claim for inverse condemnation.

### d. Civil rights conspiracy claims (Counts Three, Four, and Six)

Plaintiffs allege three civil rights conspiracy claims pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3). Defendants argue that all three are barred by the "intra-corporate conspiracy" doctrine. The City Defendants contend that Plaintiffs have alleged that all Defendants acted as Southfield's agents. ECF No. 12, PageID.311. Thus, the City Defendants argue, no conspiracy can be possible. Similarly, the Plunkett Cooney Defendants argue that they acted as Southfield's agents, so the

Southfield and Plunkett Cooney Defendants should be "considered a single 'person' for purposes of analyzing a civil conspiracy claim." ECF No. 11, PageID.248. Defendants also argue that Plaintiffs have not adequately pled these claims.

### i. Plaintiffs' civil rights claims are barred by the intra-corporate conspiracy doctrine

The "intra-corporate conspiracy" doctrine presents a defense to conspiracy claims where members of the same collective entity are alleged to have engaged in a conspiracy. *Hull v. Cuyahoga Valley Joint Vocational School Dist. Bd. of Educ.*, 926 F.2d 505, 509 (6th Cir. 1991). This is because a corporation "cannot conspire with its own agents or employees." *Id*. The intra-corporate conspiracy doctrine will not apply, however, where alleged conspiracy members act outside the scope of their employment. *Jackson v. City of Columbus*, 194 F.3d 737, 753 (6th Cir. 1999). The Sixth Circuit has consistently held that this doctrine applies to claims under 42 U.S.C. § 1985(3). *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994). And in *Jackson v. City of Cleveland,* the Sixth Circuit concluded that the intra-corporate conspiracy doctrine also applies to conspiracy claims brought under 42 U.S.C. § 1983. 925 F.3d 793, 818-19 (6th Cir. 2019).

Here, Plaintiffs allege that Defendants Al Aceves, Plunkett Cooney, Douglas Bernstein, and Patrick Lannen "were employed by [Southfield] and/or [the Downtown Development Authority], or acted as agents for

[Southfield] and/or [the Downtown Development Authority]." ECF No. 1, PageID.34. The parties dispute, however, whether Southfield and the Southfield Downtown Development Authority ("DDA") constitute the same "entity." Plaintiffs argue that "the DDA is maybe quasi-governmental, but is a non-profit corporation, distinct and separate from [the City of Southfield], a municipal corporation which is a governmental entity." ECF No. 17, PageID.488. Defendants respond that Plaintiffs' own complaint acknowledges that all Defendants, including the DDA, acted as agents of Southfield, and that Michigan courts have held that a municipality's DDA is a governmental entity in some contexts.

The Court has found little precedent clarifying whether a municipality and that municipality's Downtown Development Authority are considered the same "entity" for purposes of the intra-corporate conspiracy doctrine. But for three reasons, the court finds Defendants' position more persuasive. First, careful examination of precedent reveals that cases in the Sixth Circuit have applied the intra-corporate conspiracy doctrine where alleged conspirators were members of an "integrated enterprise" consisting of multiple sub-groups. *Amadasu v. Christ Hosp.*, No. 1:04-CV-456-SJD-TSH, 2006 WL 2850524, at *3 (S.D. Ohio July 26, 2006) (applying the intra-corporate conspiracy doctrine to "'the integrated enterprise established' between [a hospital alliance] and its member hospitals"), *report and recommendation adopted*, No.

19

1:04CV456, 2006 WL 2850511 (S.D. Ohio Oct. 3, 2006), *aff'd.*, 514 F.3d 504 (6th Cir. 2008). A DDA is created by a municipality pursuant to statute, Mich. Com. Laws § 125.4201 *et seq*, and is controlled by "a board consisting of the chief executive officer of the municipality . . . and not less than 8 or more than 12 members," who "shall be appointed by the chief executive officer of the municipality, subject to approval by the governing body of the municipality." Mich. Comp. Laws § 125.4204. Perhaps most important, the statute authorizing the creation of DDAs provides that they "shall be deemed an instrumentality of a political subdivision," for purposes of Mich. Comp. Laws § 213.321, which deals with relocation assistance to be provided when property is condemned. Under § 213.321, instrumentalities of political subdivisions are considered "state agencies." And as discussed below, DDAs are also included within the definition of "government agencies" under Michigan's Government Tort Liability Act. See Mich. Comp. Laws § 691.1401(e). This kind of total control by the municipality, together with the fact that DDAs are considered "instrumentalities" of the political subdivisions that create them, suggests they would fall within the "integrated enterprise" contemplated by the Sixth Circuit in *Amadasu.*

Second, Michigan courts appear to regard DDAs as governmental entities intimately connected to the cities that create them. *See, e.g., Mimi's Sweet Shop, Inc. v. Charter Twp. of Lansing Downtown Dev.*

20

*Auth.*, No. 349117, 2020 WL 6235779, at *1 (Mich. Ct. App. Oct. 22, 2020) (tort claims against city DDA and its Executive Director were barred by governmental immunity); *Oesterle v. Vill. of Chelsea*, No. 244484, 2004 WL 928258, at *3 (Mich. Ct. App. Apr. 29, 2004) (noting that "under the scheme articulated in the downtown development authority act . . . the DDA is clearly an arm of the Village, such that its act in conveying the easement should be deemed to be an act of the Village."). And as discussed above, DDAs are considered government agencies in at least the condemnation and governmental tort liability contexts. Mich. Comp. Laws §§ 213.321, 691.1401(e).

Third, at least one court in this District, when faced with a similar question, has concluded that two departments of one Michigan county are considered the same "entity" for purposes of the intra-corporate conspiracy doctrine. *See Tina Desandre and Robert Desandre v. County of Oscoda, et al.*, No. 20-12209, 2021 WL 3828588, at *7 (E.D. Mich. Aug. 27, 2021) (Michelson, J.) (dismissing a civil rights conspiracy claim after concluding that a county prosecutor and county sheriff's department were the same "entity" for intra-corporate conspiracy purposes).

Plaintiffs have cited no authority to support the position that Southfield and the DDA should not be considered one "entity" or "integrated enterprise" for purposes of the intra-corporate conspiracy doctrine and provide little argument beyond simply stating in their

Response Brief that they are "separate and distinct." For these reasons, the Court concludes that the intra-corporate conspiracy doctrine applies. Therefore, unless Plaintiff has pleaded that any of the Defendants acted outside the scope of their duties as employees or agents of Southfield and the DDA, Plaintiffs' conspiracy claims will be barred. Plaintiffs do not identify any acts by Plunkett Cooney, Mr. Lannen, or Mr. Bernstein that fell outside the scope of their employment or agency duties to the City of Southfield. In fact, the only insinuation that any Defendant (other than Mr. Aceves) acted outside the scope of their employment is a vague and highly generalized allegation that "the acts of these Defendants complained of herein were beyond the scope of their duties." ECF No. 1, PageID.34-35. A general and conclusory allegation like this one is insufficient to establish that any of the Plunkett Cooney Defendants acted outside the scope of their employment or agency. *See, e.g., Goodman v. Mady*, No. 04-75011, 2005 WL 2417209, at \*14 (E.D. Mich. Sept. 30, 2005) ("Plaintiff contends that it is enough under FRCP 8 that he simply state that [the Defendants] were acting in the scope of their employment. Plaintiff is wrong . . . bald conclusions that are not supported by facts are not sufficient to state a claim.").

Plaintiffs' allegations as to Mr. Aceves are more numerous, but not more specific. Plaintiffs state several times that Mr. Aceves acted outside the scope of his duties to the DDA, but do not identify any specific acts.

And all of Mr. Aceves' actions mentioned in the Complaint are acts related to his employment as Executive Director of the DDA. *See Buckley v. City of Westland,* No. 2:20-CV-11315, 2021 WL 2662255, at *4 (E.D. Mich. June 29, 2021) (Murphy, J.) (concluding police officers acted within the scope of their employment for purposes of intra-corporate conspiracy doctrine where all alleged acts "related to Defendants' employment as police officers"). Plaintiffs generally allege that Mr. Aceves acted with malice, but "the Sixth Circuit has declined to hold that actions otherwise within the scope of employment are taken outside the scope if they are also motivated by personal interests." *Desandre*, 2021 WL 3828588 at *8. Because Plaintiffs have not pleaded with sufficient specificity that any Defendants acted outside the scope of their employment or agency, Plaintiffs' claims under § 1983 and § 1985(3) are barred by the intra-corporate conspiracy doctrine.

### ii. Even if Plaintiffs' civil rights claims were not barred, Plaintiff has not alleged plausible conspiracy claims

Even if the intra-corporate conspiracy defense did not apply, Plaintiffs have not alleged plausible § 1983 conspiracy claims with sufficient specificity. "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th

Cir. 1987).  Here, Plaintiffs have merely alluded to "overt acts" without explaining what those acts were.[3] Similarly, Plaintiffs do not "describe in any detail when or how a 'meeting of the minds' took place" among the Defendants, beyond conclusory assertions that they entered a conspiracy. *Cahoo v. SAS Inst. Inc.*, 322 F. Supp. 3d 772, 812 (E.D. Mich. 2018) (rev'd in part on other grounds). "Conclusory, vague accusations that do not describe some 'meeting of the minds' cannot state a claim for relief under 42 U.S.C. § 1983." *Searcy v. Culhane*, No. 09-CV-10174, 2009 WL 1864028, at *7 (E.D. Mich. June 29, 2009).

Similarly, Plaintiffs have not alleged plausible § 1985(3) claims. Plaintiffs have not alleged facts that, if true, would allow the Court to conclude that a conspiracy existed that "was motivated by racial or other constitutionally suspect class-based animus." *In re Flint Water Cases*, 384 F. Supp. 3d 802, 851 (E.D. Mich. 2019) (citing *Bartell v. Lohiser*, 215 F.3d 550, 559-60 (6th Cir. 2000)). Instead, Plaintiffs have alleged only

---

[3] *See, e.g.*, ECF No. 1, PageID.35 (alleging that "Defendants have performed numerous acts in furtherance of the conspiracy," and "[t]hat these Defendants and the other co-conspirators committed, and continue to commit overt acts in furtherance of their conspiracy to impair Plaintiffs' ability to re-develop and re-open or sell the Hotel" without specifying what those acts were); *Id.* at PageID.37 ("Overt acts in furtherance of the conspiracy occurred or were committed when these Defendants acted in violation of 42 USC 1981"); *Id.* at PageID.38 (alleging that "[t]n furtherance of their object, Defendants did two or more overt acts against Plaintiffs, which unlawful acts include, but are not limited to the facts outlined above.").

24

that "it is clear on sight by his appearance that [Plaintiff Mr. Elhadad] is of the Jewish faith and of Rabbinic stature," that "it is clear that adverse action has been taken as a result of the same," and that "it is clear that action has been taken, at least in part as a demonstration of anti-Semitic behavior." ECF No. 1, PageID.12, 21, 24, 29. While Plaintiffs allege that "it is clear" that Defendants' behavior was motivated by racial animus, they allege no facts that would support such a conclusion. Merely alleging that one is a member of a protected class is insufficient to state a plausible claim for relief under § 1985(3). *See, e.g., Jones v. Couvreur*, No. 17-CV-11185, 2017 WL 1543703, at *5 (E.D. Mich. Apr. 28, 2017) (dismissing § 1985(3) claim and noting that "although Jones has demonstrated that he is a member of a protected class, he has not alleged facts showing any discriminatory animus against him on the part of the alleged conspirators.").

### e. Common Law Conspiracy (Count Seven)
#### i. The "intra-corporate conspiracy" doctrine bars Plaintiffs' Common Law Conspiracy claim

Just as under federal law, under Michigan law, a conspiracy requires "a combination of two or more persons." *Fenestra Inc. v. Gulf Am. Land Corp.*, 377 Mich. 565, 593, 141 N.W.2d 36, 48 (1966). Accordingly, Michigan courts have adopted the intra-corporate conspiracy doctrine followed by the Sixth Circuit. *Salser v. Dyncorp Int'l Inc.*, 170 F. Supp. 3d 999, 1010 (E.D. Mich. 2016) (quoting *Tropf v.*

25

*Holzman & Holzman*, No. 257019, 2006 WL 120377, at *1–2 (Mich. Ct. App. Jan. 17, 2006)). Therefore, Plaintiffs' state-law conspiracy claim, as currently alleged, is also barred by the intra-corporate conspiracy doctrine.

### f.  Conspiracy to Interfere with Livelihood (Count Five)

Defendants argue that Michigan law does not recognize a cause of action for "interference with livelihood." ECF No. 11, PageID.246. In response, Plaintiffs argue that "there exists a general public policy … disfavoring interference with a person's livelihood." ECF No. 16, PageID.368. Neither of the two cases cited by Plaintiffs indicate that such a tort is available under Michigan law. Instead, the cited cases address the interests to be balanced by a federal court when considering a request for a preliminary injunction under federal law. *See, e.g., Kelly Servs., Inc. v. Marzullo*, 591 F. Supp. 2d 924, 941 (E.D. Mich. 2008) (recognizing the "general public policy disfavoring restraints on trade and interference with a person's livelihood" when balancing interests associated with the request for a preliminary injunction); *Superior Consulting Co., Inc. v. Walling*, 851 F. Supp. 839, 848 (E.D. Mich. 1994) (same). Other than citation to two inapposite federal cases, Plaintiffs present nothing that would allow the Court to conclude that "conspiracy to interfere with livelihood" is a cognizable claim under Michigan law.

### g. Concert of Action (Count Eight)

According to Defendants, Plaintiffs' concert of action claims must fail because Plaintiffs have not alleged a cognizable underlying tort claim, as required by state law. ECF No. 11, PageID.249. Defendants are correct that claims for concert of action under Michigan law previously required proof that "all defendants acted tortuously pursuant to a common design." *Abel v. Eli Lilly & Co.*, 418 Mich. 311, 338, 343 N.W.2d 164, 176 (1984). But the Michigan Court of Appeals "has recently determined that 'concert of action' is . . . no longer a viable cause of action in Michigan." *Bauer v. Hammon*, No. 339703, 2019 WL 573060, at *7 (Mich. Ct. App. Feb. 12, 2019) (quoting *Mueller v. Brannigan Brothers Restaurants and Taverns, LLC*, 323 Mich. App. 566, 580; 918 N.W.2d 545 (2018)) (internal quotation marks omitted). Because concert of action "is no longer a recognized cause of action in Michigan," *Est. of Nickerson v. Ocwen Loan Servicing, LLC*, No. 18-13965, 2019 WL 6877888, at *7 (E.D. Mich. Dec. 17, 2019), any amendment would be futile. Therefore, Count Eight must be dismissed with prejudice.

### h. Malicious Prosecution (Count Nine)
#### i. Plaintiffs' malicious prosecution claim is not barred by *res judicata* principles

Defendants argue that *res judicata* principles bar Plaintiffs' claim for malicious prosecution because Plaintiff Shefa could have sought sanctions in the bankruptcy case and failed to do so, and because Plaintiff

27

did seek sanctions in the state case—a request that the state court "expressly rejected." ECF No. 11, PageID.239. Plaintiffs contend that the state court's refusal to impose sanctions does not bar recovery for malicious prosecution, as different standards apply to sanctions requests and malicious prosecution claims. ECF No. 17, PageID.486.

Michigan courts have not addressed the preclusive effect of either the denial of or failure to request sanctions on a subsequent action for malicious prosecution. But other courts have concluded that a court's grant or denial of sanctions or fee requests under Federal Rule of Civil Procedure 11 in a prior action does not preclude a subsequent state-law action for malicious prosecution. *See, e.g.*, *Cohen v. Lupo*, 927 F.2d 363, 365 (8th Cir. 1991) (concluding that denial of Rule 11 sanctions did not preclude an action for malicious prosecution as "Rule 11 and the tort of malicious prosecution differ in their nature, the elements of the claims, and the potential remedies."); *Xantech Corp. v. Ramco Indus., Inc.*, 159 F.3d 1089, 1094 (7th Cir. 1998) ("Federal case law indicates that fee requests made under Rule 11 do not pose a res judicata bar to subsequent actions for claims akin to malicious prosecution.") Defendants do not explain why the state trial court's refusal to grant sanctions under the Michigan Court Rule analogous to Rule 11[4] would compel a different

---

[4] *Thomas v. La-Van Hawkins*, No. 271031, 2008 WL 53120, at *3 (Mich. Ct. App. Jan. 3, 2008) ("Federal Rule of Civil Procedure 11 is similar to Michigan's MCR 2.114 . . . Therefore, in interpreting MCR 2.114,

result. Therefore, the Court concludes that res judicata does not bar Plaintiffs' claim for malicious prosecution.

### ii. Plaintiffs have not alleged a plausible malicious prosecution claim

Defendants argue that Plaintiffs' claims for malicious prosecution must fail because Plaintiffs have not pleaded a special injury, or that any claims lacked probable cause. ECF No. 11, PageID.250. Under Michigan law, plaintiffs asserting claims of malicious prosecution must establish three elements: "(1) prior proceedings terminated in favor of the present plaintiff, (2) absence of probable cause for those proceedings, and (3) 'malice.'" *Friedman v. Dozorc*, 412 Mich. 1, 48, 312 N.W.2d 585, 603 (1981). Malice means that the defendant acted with "a purpose other than that of securing the proper adjudication of the claim in which the proceedings are based." *Id*. Plaintiffs must also establish that they suffered a special injury: "some injury which would not necessarily occur in all suits prosecuted for similar causes of action." *Id*. at 33.

While their Complaint may be construed to allege that Plaintiffs have been subjected to a "succession of suits," qualifying as a special injury in Michigan, *Kauffman v. Shefman*, 169 Mich. App. 829, 839, 426 N.W.2d 819, 824 (1988), where the pleaded injury is succession of suits,

Michigan courts may look to federal case law interpreting [Rule 11]."); *John J. Fannon Co. v. Fannon Prod., LLC*, 269 Mich. App. 162, 167, 712 N.W.2d 731, 735 (2005) (describing Rule 11 as the "federal counterpart" to MCR 2.114).

each suit must satisfy all other elements of the malicious prosecution tort. Beyond a conclusory allegation that Defendants pursued "baseless" litigation, Plaintiffs have not alleged that any of the prior suits lacked probable cause. ECF No. 1, PageID.41. Moreover, the Oakland County Circuit Court explicitly concluded that Southfield's claims were neither frivolous nor "devoid of legal merit." ECF No. 1-6, PageID.115. While matters outside the pleadings are not to be considered at the motion to dismiss stage, under Fed R. Civ. P. 10(c), this Court may consider exhibits attached to a pleading as part of the pleading itself. *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997). Plaintiffs have not alleged that the suit in Oakland County Circuit Court, or any other suit brought by Defendants, lacked probable cause, and thus their claim for malicious prosecution must be dismissed.

### i.  28 U.S.C. § 1927 (Count Ten)

According to Defendants, Plaintiff's claim under 28 U.S.C. § 1927 must fail as a matter of law because, while that section allows a court to impose attorneys' fees against counsel for conduct occurring in a case presently before the court, "[t]here is simply no case law recognizing a claim under 28 U.S.C. § 1927 against attorneys for conduct of the attorneys in *other* litigation," which is the sole basis of Plaintiffs' tenth claim. ECF No. 11, PageID.251 (emphasis added). For their part, Plaintiffs argue that they could find no law that would prohibit a claim

30

for sanctions under 28 U.S.C. § 1927 "being brought in a subsequent unrelated court proceeding." ECF No. 16, PageID.366.

Plaintiffs' claim for sanctions must be dismissed. As the Fifth Circuit has explained, § 1927 "does not reach conduct that cannot be construed as part of the proceedings before the court issuing § 1927 sanctions." *Matter of Case*, 937 F.2d 1014, 1023 (5th Cir. 1991). Accordingly, other federal courts have held that § 1927 does not provide an independent cause of action under which prospective plaintiffs may recover for conduct that occurred before another court. *See, e.g., GRiD Sys. Corp. v. John Fluke Mfg*. Co., 41 F.3d 1318, 1319 (9th Cir. 1994) ("The suit filed in state court is an entirely separate action, not subject to the sanctioning power of the district court."); *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 69–70 (2d Cir. 1990) ("We have seen no basis for concluding that § 1927 was intended to permit a litigant to institute a new lawsuit to collect excess costs and fees incurred in a prior litigation."); *Raymark Indus., Inc. v. Baron*, 1997 WL 359333, at *7 (E.D. Pa. June 23, 1997) ("Defendants argue that Raymark has not stated a claim for relief, as § 1927 does not provide an independent cause of action. This court agrees with Defendants.") Because § 1927 sanctions are not available to punish conduct that did not occur before the sanctioning court, and because an amended pleading could not cure this deficiency, Count Ten must be dismissed with prejudice.

### j. Interference with expectancy of business relationship (Count Eleven)

#### i. Whether Defendant Aceves is entitled to immunity is not conclusively established at this stage

Defendants argue that Defendant Aceves is entitled to immunity under Michigan's Government Tort Liability Act, Mich. Comp. Laws § 691.1407(5). ("GTLA"). The GTLA shields government agencies officials from tort liability. Immunity under the GTLA for individual defendants is an affirmative defense. *Odom v. Wayne Cty.*, 482 Mich. 459, 479 (2008). The Sixth Circuit has explained that "courts generally cannot grant motions to dismiss on the basis of an affirmative defense unless the plaintiff has anticipated the defense and explicitly addressed it in the pleadings." *Est. of Barney v. PNC Bank, Nat. Ass'n*, 714 F.3d 920, 926 (6th Cir. 2013) (internal marks and citation omitted). Plaintiffs have not done so here. But "a suit can be dismissed on the basis of an affirmative defense if the facts establishing the defense are definitively ascertainable from the allegations of the complaint and they conclusively establish the affirmative defense" *Est. of Barney*, 714 F.3d at 926.

Under the GTLA, a "government agency" includes any "political subdivision," which in turn includes, among other things, "a municipal corporation," and "a district or authority authorized by law or formed by 1 or more political subdivisions." Mich. Comp. Laws § 691.1401(e). As a DDA is an "authority authorized by law" and "formed by" a political

subdivision (here, Southfield), the DDA qualifies as a government agency for purposes of the GTLA. Defendant Mr. Aceves argues that Section 691.1407(5) of the GTLA applies to him. That provision provides absolute immunity to the "highest appointive executive officials of all levels of government" when they act within the scope of their authority. Mich. Comp. Laws. § 691.1407(5). However, review of Michigan precedent reveals that whether an entity is a "level of government" for the purposes of § 691.1407(5) is an inquiry separate from whether that entity is a "government agency" or a "political subdivision" under the GTLA more generally. *See Grahovac v. Munising Twp*., 263 Mich. App. 589, 593, 689 N.W.2d 498, 500 (2004) ("To determine whether defendant is entitled to absolute immunity, we must first decide whether a township fire department is a level of government."). Whether an entity is a "level of government" depends on consideration of "whether the entity shares aspects of governance with other political subdivisions, such as the power to levy taxes, the power to make decisions having a wide effect on the members of a community, or the power of eminent domain." *California Charley's Corp. v. City of Allen Park*, No. 266383, 2006 WL 1714161, at *2 (Mich. Ct. App. June 22, 2006). It is not clear from the allegations in Plaintiff's complaint that the DDA has such powers, or otherwise is a "level of government" and therefore the facts available do not "conclusively establish the affirmative defense." Est. of Barney, 714 F.3d at 926. More information is necessary, of the kind that may be found in

the course of discovery, to make a determination as to whether §
691.1407(5) confers immunity on Defendant Aceves.

Defendant relies on one Michigan decision that appears to have
concluded that the Executive Director of a city's Downtown Development
Authority is entitled to immunity as a "highest appointive executive
official." *Mimi's Sweet Shop, Inc. v. Charter Twp. of Lansing Downtown
Dev. Auth.*, No. 349117, 2020 WL 6235779, at *1 (Mich. Ct. App. Oct. 22,
2020) (referencing Ingham County Court's decision to dismiss claims
against DDA Executive Director due to governmental immunity). While
this Court is not bound to adhere to unpublished opinions of Michigan
courts, it may consider and follow those decisions. *SunAmerica Hous.
Fund 1050 v. Pathway of Pontiac, Inc.*, No. 19-11783, 2020 WL 2308687,
at *2 (E.D. Mich. May 9, 2020). However, the record available in *Mimi's
Sweet Shop* does not allow the court to determine the reasoning that the
Ingham County Circuit Court applied in reaching its conclusion (because
that decision is not available), and the Michigan Court of Appeals
explicitly declined to address the issue on appeal, deeming it waived.
2020 WL 6235779, at *3. Consequently, the persuasive authority  of
*Mimi's Sweet Shop* is insufficient to compel the conclusion that
Defendant Aceves is entitled to immunity.

### ii. Plaintiffs have not stated a claim for tortious interference

The elements of tortious interference with a business relationship are "[(1)] the existence of a valid business relationship or expectancy, [(2)] knowledge of the relationship or expectancy on the part of the defendant, [(3)] an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and [(4)] resultant damage to the plaintiff. *Dalley v. Dykema Gossett*, 287 Mich. App. 296, 323, 788 N.W.2d 679, 696 (2010). To fulfill the third element, "a plaintiff must demonstrate that the defendant acted both intentionally and either improperly or without justification" by alleging "with specificity, affirmative acts by the defendant that corroborate the improper motive of the interference." *Id*.

Here, Plaintiffs have alleged the existence of a business relationship between Shefa and Southfield. ECF No. 1, PageID.47-48. Plaintiffs have alleged that Mr. Aceves had knowledge of the relationship. *Id*. And Plaintiffs have alleged damages. *Id*. at PageID.49. But Plaintiffs do not specifically allege any actions Mr. Aceves took, beyond a generalized allegation that "Aceves intentionally interfered" with the Southfield-Shefa relationship. ECF No. 1, PageID.48-49. This is far short of what is required to state a claim for tortious interference. Therefore, Count Ten must be dismissed for failure to state a claim upon which relief may be granted.

35

### k. Claims against the City of Southfield on a 42 U.S.C. § 1983 *Monell* theory for unconstitutional policies, customs, or practices (Count Twelve)

"To prevail in a § 1983 suit against a municipality, a plaintiff must show that the alleged violation of constitutional rights occurred because of a municipal policy or custom. *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Defendants argue that Plaintiffs have failed to identify any unlawful policy or custom that caused Plaintiffs' injury, and that Plaintiffs have pleaded only conclusory allegations without adequate factual support. ECF No. 12, PageID.307.

Plaintiffs allege that Southfield "maintained a policy, custom, or pattern and practice of promoting, facilitating, or condoning improper, illegal, and unconstitutional behavior by its officers and agents." ECF No. 1, PageID.50. Plaintiff also alleges that Southfield "possessed actual knowledge indicating a deficiency with the existing policy, supervision and/or training (or lack thereof), including but not limited to the failure to have a specific safeguards in place such as those (actions) alleged herein were likely to occur." *Id*. Beyond these general allegations, Plaintiffs do not identify with specificity any policy of Southfield that caused the injury alleged here, nor explain how any policy of Southfield caused their injuries. Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"

to withstand a motion to dismiss. *Raymond v. O'Connor*, 526 F. App'x 526, 530 (6th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Wooten v. Spigner,* No. 2:11-CV-11479-DT, 2011 WL 5075692, at *4 (E.D. Mich. Sept. 8, 2011), report and recommendation adopted, No. 11-11479, 2011 WL 5075713 (E.D. Mich. Oct. 25, 2011) (holding that plaintiffs failed to allege a *Monell* claim where they did not "allege any specific policies, practices, or customs which amounted to deliberate indifference to or actually caused the alleged constitutional violations."). Because Plaintiffs have not identified a specific custom or policy and tied that policy to their claimed injuries, their claim under *Monell* must be dismissed.

### l.  Claim for relief under 42 U.S.C. § 1988 (Count Thirteen)

Count Thirteen seeks relief pursuant to 42 U.S.C. § 1988. Section 1988 authorizes a federal court to award reasonable attorney fees to a party that prevails in a civil rights action. It "does not create a separate federal cause of action for a civil rights violation." *Thomas-El v. Smith*, No. 20-CV-10128, 2020 WL 1888829, at *5 (E.D. Mich. Apr. 16, 2020). Therefore, Count Thirteen must be dismissed with prejudice.

### m. General constitutional claims (Counts Fourteen and Fifteen)

Count Fourteen is captioned "Deprivation of Property Interest (Fifth and Fourteenth Amendments)." ECF No. 1, PageID.51. Count

Fifteen seeks relief for "14th Amendment Violations" ECF No. 1, PageID.52. These claims must be dismissed, as Plaintiffs' claims are properly brought under § 1983, not directly under the Constitution of the United States. *Foster v. Michigan*, 573 F. App'x 377, 391 (6th Cir. 2014) ("To the extent that Appellants attempt to assert direct constitutional claims, they fail; we have long held that § 1983 provides the exclusive remedy for constitutional violations."); *Fox v. City of Saginaw*, No. 19-CV-11887, 2021 WL 120855, at *13 (E.D. Mich. Jan. 13, 2021) (dismissing takings claims purporting to arise "directly" under the Fifth and Fourteenth Amendments rather than under 42 U.S.C. § 1983).

To the extent that Plaintiff Elhadad seeks to assert an equal protection claim under 42 U.S.C. § 1983, he has not alleged sufficient facts establishing that he was treated differently than others similarly situated. *Slee v. Woodhull Twp.*, No. 17-12103, 2018 WL 732198, at *13 (E.D. Mich. Feb. 6, 2018). To the extent Plaintiffs seek to assert a claim under 42 U.S.C. § 1983 for deprivation of a protected property interest, it is not clear what property interest has been impacted, or in what way. And it is similarly unclear who Plaintiff asserts these claims against.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss filed by Al Aceves, the City of Southfield, and the Southfield Downtown Development Association is **DENIED** with respect to Plaintiffs' claim for inverse

condemnation, and **GRANTED** as to all other claims.[5] The Motion to Dismiss filed by Plunkett Cooney, P.C., Patrick Lannen, and Douglas C. Bernstein is **GRANTED** with respect to all claims.

Plaintiffs' claims for concert of action under state law, sanctions under 42 U.S.C. § 1927, and for costs and fees under 42 U.S.C. § 1988 are **DISMISSED WITH PREJUDICE**. All other claims are **DISMISSED WITHOUT PREJUDICE**. If they choose to do so, Plaintiffs may file a motion seeking leave to amend the Complaint, along with a proposed Amended Complaint addressing the deficiencies raised by Defendants, within 21 days of the date of this Order.

**SO ORDERED**


s/Terrence G. Berg

_____

---

[5] Although Plaintiffs' federal claims have been dismissed, the Court will, in its discretion, exercise supplemental jurisdiction over the remaining state-law claim for inverse condemnation. *See Gamel v. City of Cincinnati*, 625 F.3d 949, 952 (6th Cir. 2010) (district court may retain supplemental jurisdiction even if all underlying federal claims are dismissed). Given the Court's familiarity with the facts in issue, the time expended on this litigation, the possibility that Plaintiffs may amend their Complaint and revive their federal claims, the fact that at least one Michigan court has concluded that it lacked jurisdiction over matters closely related to the instant case, and the possibility that this case may require involvement of the Federal Bankruptcy Court, the Court concludes that judicial economy, convenience, fairness to the litigants, and comity would be best served by exercising supplemental jurisdiction.

Dated:  September 28, 2021

TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE